1

2

3

4

5

6

7

8
IN THE UNITED STATES DISTRICT COURT

9
FOR THE EASTERN DISTRICT OF CALIFORNIA

10
TIMOTHY ELLIS ROSS,

11
        Petitioner,              No. CIV S-09-2444 LKK GGH P

12
   vs.

13
D.K. SISTO,                FINDINGS AND RECOMMENDATIONS

14
        Respondent.

15
_____/

16
INTRODUCTION

17
      Petitioner, a state prisoner proceeding pro se, has filed a petition pursuant to 28

18
U.S.C. § 2254.  Petitioner challenges California Governor Arnold Schwarzenegger's reversal of

19
the May 22, 2006 decision by the Board of Parole Hearings (hereinafter Board) finding petitioner

20
suitable for parole.  He claims that the Governor's action violated his rights to due process and

21
equal protection.  Upon careful consideration of the applicable law, the undersigned will

22
recommend that respondent's motion to dismiss be denied and petitioner given the opportunity to

23
exhaust the new factual basis for his claims in the California Supreme Court.

24
PROCEDURAL AND FACTUAL BACKGROUND

25
      In 1985, petitioner pled guilty to second degree murder and was sentenced to 15

26
years to life in state prison.  (Doc. 1 (hereinafter Pet.) at 1.)  On May 22, 2006, at his eighth

1  parole hearing, the Board found petitioner suitable for parole.  (Pet. at 102, 106[1].)  The Board

2  concluded that "the negative aspects [of petitioner's crime 21 years earlier] are outweighed by the

3  period of time that you've been in custody . . . and the fact that you've put that time to productive

4  use."  (Id. at 101.)  It noted petitioner's "minimal disciplinary history" and "maturation, growth .

5  . . [and] sincere expressions of remorse."  (Id. at 102.)  Having noted that his pre-commitment

6  crimes were "all the result of you apparently abusing alcohol" (id. at 100), the Board recognized

7  that petitioner had "consistently involved yourself in programs addressing the use of alcohol,

8  either AA or Christian based 12 step program [and] appear to have adopted attendance of those

9  programs[.]"  (Id. at 101.)

10          The Board also found "indications that if released you will have a high likelihood

11  of succeeding on parole."  (Id. at 102.)  These included petitioner's "change in attitude that

12  would reside [sic] in good citizenship," his parole plans of living with family in Redding, and his

13  relationship with a woman he had known for many years.  (Id.)  "What's critically important,"

14  the Board concluded, ". . . [is] you absolutely have to stay away from alcohol."  (Id. at 103.)

15  Accordingly, the Board granted parole on the "special conditions" that petitioner not use any

16  alcoholic beverages, and that he submit to alcohol testing by his parole officer or other law

17  enforcement and continue to participate in a substance abuse program.  (Id. at 104-105.)

18          On October 10, 2006, Governor Arnold Schwarzenegger reversed the Board's

19  grant of parole.  In his written decision (Pet. at 154-155 (hereinafter, 2006 decision)), the

20

21      [1]  Because petitioner has not consistently numbered his exhibits, the undersigned will refer to them by the page numbers assigned by CM/ECF.  For future reference, petitioner's

22  exhibits include (1) his January 4, 2007 petition for review to the California Supreme Court (Pet. at 28-32); (2) the California Court of Appeal, Third Appellate District's December 21, 2006

23  denial of his petition for review (Pet. at 34); (3) an October 19, 2006 letter from the Governor reversing petitioner's grant of parole (Pet. at 35); (4) the California Supreme Court's June 10,

24  2009 denial of his petition for review (Pet. at 36); (5) the transcript of the May 22, 2006 Board hearing resulting in a grant of parole (Pet. at 38-107); (6) his November 20, 2006 petition for

25  review to the California Court of Appeal, Third Appellate District (Pet. at 109-122); (7) the Governor's April 10, 2009 letter reversing the Board's 2006 grant of parole and attached

26  statement of reasons (Pet. at 149-153); (8) the Governor's October 10, 2006 statement of reasons for reversing the Board's 2006 grant of parole (Pet. at 154-155).

1   Governor summarized his reasons for reversal as follows:

2          I have considered various positive factors in reviewing whether Mr. Ross is
           suitable for parole at this time. [Cites petitioner's vocational training, institutional
3          jobs, self-help and therapy including programs for alcohol addiction, close ties
           with family and friends, positive evaluations from mental health and corrections
4          professionals, and plans to live and work with a family upon release.

5          Despite the positive factors I have considered, the second-degree murder for
           which Mr. Ross was convicted was extremely brutal and callous . . . The gravity
6          of the second-degree murder perpetrated by Mr. Ross is alone sufficient for me to
           conclude presently that his release from prison would pose an unreasonable
7          public-safety risk.

8          . . . [H]e has a lengthy adult criminal record.  Mr. Ross's criminal history, which
           includes incidents of violent and assaultive behavior, demonstrates his inability or
9          unwillingness to conform his behavior to the rules of free society and weighs
           against his parole suitability at this time.
10
           . . . [G]iven the current record before me, and after carefully considering the very
11         same factors the Board must consider, I find that the negative factors weighing
           against Mr. Ross's parole suitability presently outweigh the positive ones.
12         Accordingly, and because I believe his release would pose an unreasonable risk of
           danger to society, I REVERSE the Board's 2006 decision to grant parole to Mr.
13         Ross.

14              The 2006 decision triggered a lengthy course of litigation in the state courts in

15   which petitioner challenged the Governor's decision and sought his release pursuant to the

16   Board's grant of parole.  As described below, his efforts met with some success.  Most pertinent

17   here are petitioner's first habeas petition to the California Supreme Court; the Court of Appeal's

18   grant of a subsequent habeas petition in In re Ross, 170 Cal. App. 4th 1490 (2009); petitioner's

19   second habeas petition to the California Supreme Court; and the Governor's revised decision,

20   again reversing petitioner's 2006 grant of parole, which issued in 2009 as a direct result of

21   petitioner's legal challenges to the 2006 decision.  These events and their context are described

22   below.

23          A.    First Petition to the Supreme Court

24              On November 20, 2006, petitioner filed a petition for writ of habeas corpus in the

25   California Court of Appeal, Third Appellate District, challenging the Governor's 2006 decision.

26   (Pet. at 109-122.)  On December 21, 2006, the Court of Appeal denied this petition for failure to

3

first seek relief in the trial court.  See Ross, supra, 170 Cal. App. 4th at 1496-1497 (summarizing procedural history of Ross litigation) (also attached as Motion to Dismiss (Doc. 12, hereinafter MTD), Ex. 4.)

On January 4, 2007, petitioner filed a habeas petition in the California Supreme Court, incorporating by reference his earlier petition to the Court of Appeal.  (Pet. at 28-32; 109-122.)  On March 21, 2007, the Supreme Court granted this petition and ordered the Court of Appeal to vacate its summary denial and issue "an order to show cause, returnable before the Shasta County Superior Court[,]" requiring the Director of Corrections and Rehabilitation to show cause "why the Governor did not abuse his discretion in reversing" the Board's 2006 grant of parole "and why petitioner remains a danger to public safety."  (MTD, Ex. 2).

This first, successful habeas petition to the California Supreme Court bears reviewing in some detail.  In it, petitioner cited federal authority in claiming that the Governor improperly relied solely on petitioner's pre-prison record as the basis for finding him unsuitable for parole. (Pet. at 116.)  Also citing federal authority, he argued that the Governor improperly based his denial of parole on the "unchanged circumstances" of petitioner's crime without factoring in petitioner's behavior in prison and present danger to society.  (Pet. at 120-121.)  In attached materials labeled "Exhibit A," petitioner included a recent federal opinion in support of his argument that the Governor violated his due process rights by basing the decision to deny parole on petitioner's crime and pre-imprisonment criminal history.  (Pet. at 113 (incorporating Exhibit A), 133-138 (letter to Governor and attached case).)

Petitioner further alleged to the Supreme Court that the Governor improperly disregarded (1) the 2004 finding of a forensic psychologist that petitioner posed a low risk to society; (2) "current laws providing for an individual consideration" of an inmate's suitability for parole; and (3) petitioner's "liberty interest," instead relying on "immutable facts, such as the triggering crime[.]" (Pet. at 30.)

\\\\\

1    As directed by the Supreme Court, the Court of Appeal issued an order to show

2  cause to the Director of Corrections and Rehabilitation, returnable before the Shasta County

3  Superior Court.  Ross, 170 Cal. App. 4th at 1496.  On September 12, 2007, "[t]he superior court

4  denied the petition for writ of habeas corpus, ruling that the Governor's decision was supported

5  by defendant's criminal history and the nature of his crime."  Id.  (See MTD, Ex. 3.)

6    B.    Court of Appeal's Habeas Grant and Remand

7    On October 30, 2007, petitioner filed another petition for writ of habeas corpus

8  with the Court of Appeal.  Id.  The Court of Appeal

9    issued an order to show cause on February 7, 2008. Thereafter, the
     California Supreme Court decided In re Lawrence (2008) 44
10    Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535 (hereafter
     Lawrence ) and In re Shaputis (2008) 44 Cal.4th 1241, 82
11    Cal.Rptr.3d 213, 190 P.3d 573, clarifying its decisions in In re
     Rosenkrantz (2002) 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d
12    174 (hereafter Rosenkrantz ) and In re Dannenberg (2005) 34
     Cal.4th 1061, 23 Cal.Rptr.3d 417, 104 P.3d 783 and the limits on
13    the Governor's broad discretion to deny parole.

14  Id. at 1496-1497.  The parties submitted supplemental briefing addressing the impact of these

15  decisions on petitioner's writ.  Id. at 1497.

16    On February 10, 2009, the Court of Appeal held that the 2006 decision was

17  supported by "some evidence" that petitioner was unsuitable for parole, as required by law.  Id.

18  However, it also concluded that, under the Supreme Court's recent holding in Lawrence, "the

19  Governor's written decision is flawed because it does not contain a more explicit 'articulation of

20  a rational nexus between th[e] facts and current dangerousness.'"  Id. (citing Lawrence, supra, 44

21  Cal. 4th at 1227).  On this basis, the Court of Appeal granted the habeas petition and remanded

22  the matter to the Governor with instructions to vacate his 2006 decision "which reversed the

23  Board's finding in 2006 that defendant was suitable for parole, and to reconsider the matter

24  consistent with the standards articulated in Lawrence[.]"  Id. at 1515.

25    Significantly, although issued in 2009, the Court of Appeal's opinion in In re Ross

26  repeatedly notes that the issue is whether the Governor properly evaluated petitioner's suitability

1  for parole in 2006.  See id. at 1497 (summarizing "evidence supporting the Governor's finding

2  that defendant was unsuitable for parole in 2006"); id. at 1508 (considering whether "defendant

3  would be a danger to public safety if he were released on parole in 2006" or "if granted parole in

4  2006"); id. at 1510 (considering "whether defendant remained a threat to public safety in 2006"

5  or "presented a current danger to public safety if paroled in 2006"); id. at 1511 (same); id. at

6  1512 (same); see also id. at 1501 (describing petitioner's "most recent psychological evaluation,

7  prepared in December 2004" and "life prisoner evaluation report prepared in 2005"); id. at 1502

8  (concluding summary of relevant evidence with petitioner's behavior at his "parole hearing in

9  2006").[2]

10          "We reiterate," the Court wrote, "that the Governor had to base his decision on the

11  same factors that restricted the Board's discretion in determining whether a life-term inmate 'will

12  pose an unreasonable risk of danger to society if released from prison [citation], but that the

13  Governor had the 'discretion to be more stringent or cautious.'"  Id. at 1512 (citing Lawrence,

14  supra, 44 Cal. 4th at 1204.); see also id. at 1505 ("In reviewing the Board's finding, the

15  Governor's decision must be based upon the same factors that restrict the Board in rendering its

16  parole decision . . . in light of the full record before the Board or Governor") (internal citations

17  omitted).

18          This emphasis is notable in light of the fact that the Governor's revised decision,

19  described below, drew liberally on materials post-dating the 2006 Board hearing.

20      C.      Second Petition to the Supreme Court

21          In a second habeas petition to the California Supreme Court filed on March 20,

22  2009, petitioner challenged the Court of Appeal's decision in In re Ross.  (MTD, Ex. 6.)   In it,

23  he urged that the Court of Appeal had improperly "salvage[d]" the 2006 decision by "scouring

24  

25          [2] The Court of Appeal also considered "[t]he last psychological evaluation that addressed
    a critical issue regarding defendant's mental state while incarcerated[.]"  Id. at 1511.  In his
    subsequent petition to the Supreme Court challenging In re Ross, petitioner claims this
26  psychological evaluation "was made in February 1999."  (MTD, Ex. 6 at 3.)

1    the record for evidence never relied on" by the Governor in order to meet the "some evidence"

2    standard.  (Id. at 5, 8.)  He also argued that, because the Court of Appeal found the 2006 decision

3    legally insufficient, the proper remedy was to reinstate the Board's grant of parole, not remand to

4    the Governor for a new decision.  (Id. at 6-8, 17.)

5              D.    Governor's 2009 Decision

6              On April 9, 2009, while this second habeas petition to the Supreme Court was

7    pending, the Governor vacated the 2006 decision and issued a new decision, also reversing the

8    Board's 2006 grant of parole.  (Pet. at 150-153 (hereinafter, 2009 decision).)  Per the Court of

9    Appeal's instruction, the 2009 decision explained in greater detail why the Governor found

10   petitioner to pose an unreasonable risk to society if released.  It concluded:

11                  The gravity of the crime, when considered with Mr. Ross' history
                    of violence and substance abuse, and the information showing that
12                  he minimizes his life offense, that he lacks understanding regarding
                    the circumstances of his crime and his responsibility for the
13                  offense, that his substance abuse increases his risk of crime and
                    violence but he lacks an adequate plan for addressing his substance
14                  abuse, and also his evaluations showing a continued risk of
                    recidivism, all indicate to me that he has not addressed the risk
15                  factors and causal factors that led to the prior crime and violence,
                    and that he still poses a risk of violence if released. . . . This
16                  information, along with the risk assessment contained in his most
                    recent mental-health evaluation, indicates to me that Mr. Ross still
17                  poses a risk of recidivism and violence, and that his release from
                    prison at this time would pose an unreasonable risk of public
18                  safety.

19   (Id. at 152-153) (emphasis added).

20             Indeed, the most substantial addition to the 2009 decision – which in part

21   replicated the language of the 2006 decision – was a lengthy discussion of a 2008 mental health

22   evaluation of petitioner.  (Id. at 151-152.)  This evaluation, the Governor stated, "indicates that

23   Mr. Ross still lacks understanding of his responsibility for the murder and the gravity of his

24   offense" (id. at 151), "raises additional concerns," and "provides further evidence indicating that

25   Mr. Ross continues to pose a risk of violence if released."  (Id. at 152.)  The Governor also cited,

26   as evidence of petitioner's current danger to society, the Board's conclusion at a 2008 hearing

                                                    7

1   that petitioner's crime was "committed in an especially heinous, atrocious and cruel manner" (id.

2   at 151); the fact that petitioner was "counseled twice for other misconduct, most recently in

3   2008" (id.) and the fact that petitioner's "parole plans have not been confirmed since 2006 [and]

4   there is no way to know whether his plans are viable at this time."[3]  (Id.)  Thus, the Governor

5   concludes, "given the current record before me . . . , I believe his release from prison would pose

6   an unreasonable risk of danger to society at this time.  Accordingly, I reverse the Board's 2006

7   decision to grant parole to Mr. Ross."  Id. at 153 (emphasis added).

8           On June 12, 2009, a few months after the 2009 decision issued, the California

9   Supreme Court summarily denied petitioner's habeas challenge to the Court of Appeal's decision

10  in In re Ross.  (MTD, Ex. 7.)  On August 31, 2009, petitioner filed the instant federal habeas

11  petition.

12                                              ANALYSIS

13  A.      Petitioner's Claims

14          In the instant Petition, petitioner does not specify whether his claims apply to the

15  2006 decision or 2009 decision.  They are worded broadly enough to apply to both, or either.

16           In any event, petitioner claims that "the Governor's decision to reverse the board"

17  violates his right to due process because the Governor "disregards" the finding by Dr. Preston

18  Davis in petitioner's December 2004 psychological evaluation that petitioner shows "a low risk

19  of danger to society."  (Pet. at 5, 7; see also id. at 68 (describing Davis findings).)  Similarly,

20  petitioner claims that the Governor's decision violates due process because it "disregards" the

21  Board's conclusion in 2006 that petitioner was "no longer a threat to society."  (Id. at 5, 7-9; see

22  also id. at 102.)  Third, petitioner claims that "the Governor's reversal" violates his due process

23  and equal protection rights because "petitioner has met and exceeded the factors [under state law]

24

25          [3] The 2009 decision does not address the "mental state evidence identified above" by the
    Court of Appeal, dating from 1998 to 2006, presumably because more recent evidence was
26  available.  Ross, 170 Cal. App. 4th at 1513; see id. at 1509-1513.

1    to be found suitable for parole" and the Governor's decision is "arbitrary and capricious[.]"  (Id.

2    at 6, 9.)  Fourth, petitioner claims that the Governor improperly relied on "unchanging,

3    immutable factors such as petitioner's triggering offense and pre-prison record" in violation of

4    due process.  (Id. at 6, 10.)  Petitioner also claims, more generally, that "the Governor must

5    explain the basis of [his] decision" and that the state violated his liberty interest in parole.  (Id. at

6    13-17.)

7    B.    Motion to Dismiss

8                Respondent moves for dismissal of the petition on the grounds that petitioner lacks

9    standing to challenge the 2006 decision and, whether the petition challenges the 2006 or 2009

10   decision, petitioner has failed to exhaust state remedies.  (MTD at 4-6.)  The undersigned

11   addresses these points in turn.

12        1.    Standing

13                Respondent argues correctly that petitioner has the burden of showing that the

14   federal court has jurisdiction over his claims.  (MTD at 4, citing United States v. Hayes, 515 U.S.

15   737, 742, 115 S.Ct. 2431 (1995).)

16                "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

17   threshold requirement imposed by Article III of the Constitution by alleging an actual case or

18   controversy."  City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665 (1983);

19   Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006). "Abstract injury is not

20   enough."  Lyons, 461 U.S. at 101, 103 S.Ct. at 1665.  "[P]laintiff must show that he has sustained

21   or is immediately in danger of sustaining some direct injury as the result of the challenged official

22   conduct and the injury or threat of injury must be both real and immediate, not conjectural or

23   hypothetical."  Id.  "The key issue is whether the plaintiff is 'likely to suffer future injury.'"

24   Jones, 444 F.3d at 1126 (quoting Lyons at 105, 1667).

25                Respondent argues that petitioner lacks standing to raise the instant claims insofar

26   as they challenge the 2006 decision, because that decision has been vacated.  (MTD at 4.)  Be that

1  as it may – and the issue is really one of mootness –  the undersigned finds that petitioner has

2  standing to challenge the 2009 decision, itself a revision of the 2006 decision, currently in effect.

3         Clearly, petitioner has been injured by the 2009 decision:  He is still in prison,

4  despite the Board's 2006 grant of parole.  Thus, he has alleged a case or controversy.

5         2.   <u>Exhaustion</u>

6         Respondent correctly states that, to exhaust his state court remedies, petitioner

7  must provide the state's supreme court with "a full and fair opportunity to consider his federal

8  claims on the merits."  (MTD at 4, quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509

9  (1971).)  As the Ninth Circuit has held:

10        The federal habeas petitioner must "provide the state courts with a
11        'fair opportunity' to apply controlling legal principles to the facts
      bearing upon his constitutional claim."  Anderson v. Harless, 459
12        U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). "It is not enough
      that all the facts necessary to support the federal claim were before
13        the state courts, or that a somewhat similar state-law claim was
      made." Id. (internal citations omitted).  In order to satisfy the
14        exhaustion requirement, the petitioner must have fairly presented
      the substance of his federal claim to the state courts. Id.; see also
15        Hudson v. Rushen, 686 F.2d 826, 830 (9th Cir.1982), cert. denied,
      461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983).  A federal
16        claim "is fairly presented if the petitioner has described the
      operative facts and legal theory upon which his claim is based."
17        Tamapua v. Shimoda, 796 F.2d 261, 262 (9th Cir.1986).
18

19  <u>Bland v. California Dept. of Corrections</u>, 20 F.3d 1469, 1472-1473 (9th Cir. 1994), overruled on

20  other grounds by <u>Schell v. Witek</u>, 218 F.3d 1017 (9th Cir. 2000).  The exhaustion of state court

21  remedies is a prerequisite to the granting of a petition for writ of habeas corpus.  28 U.S.C. §

22  2254(b)(1).  If exhaustion is to be waived, it must be waived explicitly by respondent's counsel.

23  28 U.S.C. § 2254(b)(3).

24         Respondent is also correct that petitioner has the burden of proving exhaustion of

25  state court remedies, and unexhausted claims must be dismissed.  (MTD at 5, citing <u>Gonzales v.</u>

26  <u>Stone</u>, 546 F.2d 807, 808 (9th Cir. 1976); also citing <u>Cartwright v. Cupp</u>. 650 F.2d 1103, 1104

1   (9th Cir. 1981)).

2           Respondent argues that petitioner has not exhausted his claims challenging the

3   2006 decision because one of his petitions to the California Supreme Court while that decision

4   was in effect challenged only the relief granted by the California Court of Appeal.  (MTD at 5.)

5   This argument ignores the fact that, in his first habeas petition to the California Supreme Court,

6   petitioner raised challenges to the 2006 decision nearly identical to those in the instant petition.

7   (Pet. at 28-32; see also id. at 109-122.)  Indeed, the Supreme Court granted this petition, spurring

8   additional rounds of litigation, including petitioner's second habeas petition to the Supreme

9   Court, which – as respondent notes – mainly concerned issues of relief.  (MTD at 5.)

10          Respondent next argues that petitioner has not exhausted his claims challenging

11  the 2009 decision, reasoning:  "Ross has not shown that he raised any challenge to the

12  Governor's 2009 decision in the California Supreme Court.  Any claims regarding the

13  Governor's 2009 decision are therefore likewise unexhausted and must be dismissed."  (MTD at

14  5.)

15          This argument has a certain logical appeal.  Because petitioner filed his second

16  habeas petition to the California Supreme Court roughly three weeks before the Governor issued

17  the 2009 decision, he certainly did not challenge the Governor's specific, new bases for reversing

18  the Board's 2006 grant of parole in the California Supreme Court.  In some sense, then, his

19  claims as to the 2009 decision are unexhausted.

20          However, the undersigned is not persuaded that petitioner's instant claims should

21  be dismissed for failure to exhaust.  This case presents a unique procedural backdrop: a petitioner

22  who has diligently and consistently challenged on constitutional grounds the Governor's reversal

23  of his 2006 grant of parole; the partial success of those claims in both the California Supreme

24  Court and California Court of Appeal; the issuance of a revised gubernatorial decision, again

25  reversing petitioner's 2006 grant of parole, as a direct result of petitioner's legal challenges to the

26  original decision; and finally, the fact that the 2009 decision appears on its face to disregard the

Court of Appeal's strong suggestion that the issue remanded for the Governor's reconsideration was whether petitioner was suitable for parole in 2006, based on evidence before the Board in 2006.

In Vasquez v. Hillery, 474 U.S. 254, 257-258, 106 S.Ct. 617 (1986), the Supreme Court held that "supplement[ation] and clarif[ication] of the state-court record" on federal habeas review does not "evade[] the exhaustion requirement where the prisoner has presented the substance of his claim to the state courts."  There, the new factual evidence consisted of several affidavits and a computer-generated mathematical analysis bearing on petitioner's claim that blacks had been systematically excluded from the grand jury that indicted him.  Id. at 258-259. As the District Court's "request for more information was evidently motivated by a responsible concern that it provide . . . meaningful federal review of [petitioner's] constitutional claims" and the prisoner had not "attempted to expedite federal review by deliberately withholding essential facts from the state courts," the Supreme Court held that this "supplemental evidence . . . did not fundamentally alter the legal claim already considered by the state courts[.]"  Id. at 260.

Similarly, the Ninth Circuit has held that "as long as the 'ultimate question for disposition' has remained the same in state and federal court, . . . 'variations in the legal theory or factual allegations urged in its support' are entirely legitimate."  Robinson v. Schriro, 595 F.2d 1086, 1102 n.14 (9th Cir. 2010) (citing Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509 (1971); accord Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir.2007); McKinney v. Artuz, 326 F.3d 87, 97 (2d Cir. 2003); Boyko v. Parke, 259 F.3d 781, 788-89 (7th Cir.2001); Weaver v. Thompson, 197 F.3d 359, 364-65 (9th Cir.1999)).

In Weaver, supra, 197 F.3d at 364, petitioner "consistently pressed" the claim that his trial was tainted by bailiff and/or juror misconduct.  Nearly six years after the trial, the federal court held an evidentiary hearing and granted the habeas petition on the ground that the trial court, not the bailiff, had erred.  Id. at 362, 364.  Respondent urged that petitioner had not exhausted this claim in state court.  Id.  Calling this "unwarranted hairsplitting," the Ninth Circuit

1  responded:

2      We acknowledge that the precise factual predicate for Weaver's claim changed
       after the district court conducted its evidentiary hearing. "However, new factual
3      allegations do not render a claim unexhausted unless they 'fundamentally alter the
       legal claim already considered by the state courts.' " Chacon v. Wood, 36 F.3d
4      1459, 1468 (9th Cir.1994) (quoting Vasquez v. Hillery, 474 U.S. 254, 260, 106
       S.Ct. 617, 88 L.Ed.2d 598 (1986)). The facts adduced at the evidentiary hearing
5      did not "fundamentally alter" Weaver's claim. . . . Weaver's inability to fully
       explore what transpired during that incident stemmed from the state courts' refusal
6      to grant him an evidentiary hearing on the matter, rather than from any failure of
       diligence on his part. The legal basis for Weaver's claim, moreover, remained
7      unchanged. . . . Given the state courts' consistent refusal to grant him an
       evidentiary hearing, we conclude that Weaver 'fairly presented' the substance of
8      his federal claim to the state courts, and thus properly exhausted his claim within
       the meaning of § 2254(b)(1).

9

10  Id. at 364-365.

11          Under these cases, the undersigned finds that petitioner has exhausted his legal

12  claims by virtue of his first petition to the California Supreme Court, which challenged the

13  Governor's reversal of the Board's 2006 grant of parole on federal due process grounds.  The

14  new factual predicate for these claims – the 2009 decision – does not "fundamentally alter the

15  legal claim[s] already considered by the state courts." Weaver, supra, at 364.  Critical to this

16  finding is the fact that the 2009 decision is not based on a different, post-2006 Board

17  determination of petitioner's suitability for parole.  Rather, it stems from an appellate remand to

18  the Governor telling him to redo the 2006 decision in light of petitioner's meritorious legal

19  challenge to that decision.  Thus, the 2009 decision not only has the same result as the 2006

20  decision – reversing the Board's 2006 grant – but is part of the same litigation that petitioner

21  commenced upon issuance of the 2006 decision and has diligently pursued ever since.  The

22  undersigned therefore construes the 2009 decision as the latest iteration of the 2006 decision for

23  purposes of concluding that petitioner has exhausted his legal claims.

24          Factually, however, the 2006 and 2009 decisions are not interchangeable.  The

25  2009 decision to reverse the Board's 2006 grant of parole is based on substantially different facts

26  than its predecessor – most notably, the 2008 evidence.  To satisfy the exhaustion requirement, a

1    petitioner must "present the highest state court with the claim's factual and legal basis."   Duncan

2    v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887 (1995); see also Keeney v. Tamayo-Reyes, 504 U.S.

3    1, 112 S.Ct. 1715 (1992) (factual basis), superceded by statute as stated in Williams v. Taylor,

4    529 U.S. 362, 120 S.Ct. 1495 (2000).  Here, the factual basis for the instant claims, namely the

5    2009 decision, did not issue until after petitioner had sought habeas relief in the California

6    Supreme Court.  That court therefore lacked the opportunity to rule on petitioner's constitutional

7    claims in light of the relevant facts.

8           In somewhat similar circumstances, where the state court "made no factual

9    finding with respect to" the issue on which petitioner's claim for habeas relief was based, the

10   Ninth Circuit reversed the district court's summary denial of the claim and remanded to the

11   district court for an evidentiary hearing on the key factual issue.  Chacon v. Wood, 36 F.3d 1459,

12   1470 (9th Cir. 1994), overruled on other grounds by statute, 28 U.S.C. § 2253.  In Chacon,

13   petitioner alleged that his guilty plea was involuntary and that he was denied effective assistance

14   of counsel.  At a state court evidentiary hearing, petitioner testified that the translator who was

15   the intermediary for all attorney-client communications between petitioner and his lawyer

16   misrepresented the length of time petitioner would have to serve if he pled guilty.  Id. at 1461.

17   The state court found that petitioner's attorney properly represented him and that the translator

18   was competent, "but it did not make any finding regarding Chacon's allegations that [the

19   translator] failed to provide complete and accurate translations to him."  Id.

20          The district court denied petitioner's ineffective assistance of counsel claim,

21   relying "on the findings of fact made by the state Superior Court at the post-conviction hearing,

22   even though that court did not decide the issue that provides the central basis for Chacon's

23   ineffective assistance claim – whether the interpreter accurately and fully translated [the

24   lawyer's] advice to Chacon."  Id. at 1463.  "Because this issue cannot be resolved on the basis of

25   the state court record alone, and because Chacon has alleged facts which if true would constitute

26   a violation of the Sixth Amendment, we reverse and remand for an evidentiary hearing on the

1   ineffective assistance claim." Id.

2          In the instant case, where no state court has applied petitioner's legal claims to the

3   Governor's revised 2009 decision, an evidentiary hearing in the district court would make little

4   sense.  Here, the new "evidence" is a revised written decision by the Governor, and a state court

5   of appeal is just as capable of – and under principles of comity, better suited to – applying

6   constitutional standards to the 2009 decision as the district court.  "The exhaustion requirement is

7   based on principles of comity.  In the words of the Supreme Court, '[I]t would be unseemly in

8   our dual system of government for a federal district court to upset a state court conviction

9   without an opportunity to the state courts to correct a constitutional violation.'"  Weaver, supra,

10  197 F.3d at 364 (quoting Picard, supra, 404 U.S. at 275); see also Jackson v. Caldwell, 452 F.2d

11  1068 (5th Cir. 1972) (first opportunity to determine facts on which federal habeas corpus

12  petitioner bases his claim should be afforded to state courts).

13  C.     Stay Pending Exhaustion

14         Given the unique posture of this case, and the requirement that petitioner exhaust

15  both the legal and factual bases of his claim in the state Supreme Court, this court in exercise of

16  its equitable power recommends that petitioner be given the opportunity to exhaust the factual

17  basis of his claims in the California Supreme Court while staying the instant claims.  In practice,

18  this would mean filing a petition for writ of habeas corpus in the California Supreme Court

19  including the same legal claims as in the instant petition, as applied to the "new facts" of the

20  2009 decision.  See In re Martin 44 Cal.3d 1, 27 n.3 (1987) ("It is, of course, the rule that a

21  petition for habeas corpus based on the same grounds as those of a previously denied petition

22  will itself be denied when there has been no change in the facts or law substantially affecting the

23  rights of the petitioner.  In this case, however, new facts are alleged in the petition and supported

24  by exhibits of recent date.") (citing In re Miller, 17 Cal. 2d 734, 735 (1941)).

25         In Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005), the United States

26  Supreme Court found that a stay and abeyance of a mixed federal petition should be available

only in the limited circumstance that good cause is shown for a failure to have first exhausted the

claims in state court, that the claim or claims at issue potentially have merit and that there has

been no indication that petitioner has been intentionally dilatory in pursuing the litigation. Id. at

277-78, 125 S.Ct at 1535. The undersigned finds that petitioner meets the standards for a Rhines

stay, in that the Governor's April 9, 2009 issuance of a new factual basis for petitioner's due

process claims constituted good cause for petitioner's failure to address the 2009 decision in his

March 20, 2009 petition to the California Supreme Court; that petitioner's claims potentially

have merit; and that he has not been dilatory, intentionally or otherwise, in pursuing the

litigation.

The undersigned therefore recommends that the instant petition be stayed pursuant

to Rhines, giving petitioner the opportunity to exhaust the factual basis of his claims in the

California Supreme Court. Petitioner will be instructed to file status reports of his progress.

Once the California Supreme Court renders its opinion, provided the opinion is a denial of relief,

petitioner must file an amended petition including all of his fully exhausted claims.

<u>CONCLUSION</u>

As has been said at several junctures herein, the procedural history of this case

places it in a fairly unique position vis-a-vis exhaustion. While respondent can make the

argument that punctilious observation of every exhaustion prerequisite has not been observed,

overall, petitioner has attempted to give the state courts an opportunity to exhaust most of the

facts underlying his claims herein – and then some. Dismissal of the entire petition, without

giving petitioner an opportunity to exhaust what little has not been exhausted in this state

proceeding marathon, i.e., simply a revised wording of an already made Governor's

determination, makes no sense.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's Motion to Dismiss (Doc. 12) be denied;

2. Petitioner be granted a stay pursuant to Rhines v. Weber, 544 U.S. 269, 125

1    S.Ct. 1528 (2005).

2              3.  The proceedings be stayed pending exhaustion of state remedies;

3              4.  Petitioner be directed to file a status report of his progress in the state courts

4    within thirty (30) days, and then every thirty (30) days thereafter until exhaustion is complete;

5              5.  Within thirty (30) days after the final order of the California Supreme Court,

6    petitioner must file an amended petition in this court including his fully exhausted claims; and

7              6.  Petitioner's failure to comply with these directives will result in the district

8    court's vacating the stay.

9              These findings and recommendations are submitted to the United States District

10   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

11   (14) days after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14   shall be served and filed within fourteen (14) days after service of the objections.  The parties are

15   advised that failure to file objections within the specified time may waive the right to appeal the

16   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17   DATED: 07/22/2010

18                                    /s/ Gregory G. Hollows

19                                    _____
                                     GREGORY G. HOLLOWS
20                                   UNITED STATES MAGISTRATE JUDGE

21

22   GGH:014
     .fr
23

24

25

26

17